UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Plaintiff-Appellee,

v.

PAN AMERICAN INSURANCE COMPANY, Defendant-Appellant.

No. 71–1893

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Nov. 12, 1971.

Rehearing and Rehearing En Banc Denied Dec. 27, 1972.

* [1] Rule 18, 5 Cir.; See Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Otto A. Ritter, Longview, Tex., Vincent W. Rehmet, Houston, Tex., for defendant-appellant.

Donald Carroll, Mike Hatchell, Tyler, Tex., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge.

While Suell, an employee of Holly Motor Company, was returning customer Bagwell's car to him after it had been repaired, a collision occurred resulting in personal injury to Beleck. Holly's liability carrier, appellee Universal, settled Beleck's claim and then recovered judgment from Bagwell's liability carrier, appellant Pan American. This appeal ensued. We reverse.

Bagwell is the owner of a private automobile purchased from Holly Motor Company. While the car was still under warranty, Bagwell delivered it to Holly for repairs. He was then driven by a Holly employee to his office. Following the completion of the repair work, Suell, an employee of Holly, was directed to return the car to Bagwell. On the way to Bagwell's office, Suell was involved in a collision with Beleck, which resulted in Beleck's injury. At the time of the accident, Suell was an unlicensed driver.

Pan American is the liability insurer for Bagwell. Universal is the liability insurer for Holly under a garage liability policy. Beleck's suit against Holly and its employee was settled by Universal for $13,500. Suit was then instituted in the district court by Universal against Pan American to recover the amount of the settlement plus costs and attorney's fees, on the ground that Pan American had primary coverage for the Beleck claim under Bagwell's policy while Universal had only excess coverage under the Holly policy.

The Universal policy issued to Holly provides in pertinent part: "* * * the insurance under this policy with respect to loss arising out of * * * the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance." There was "other valid and collectible insurance," Universal contends, because Suell had the permission of Bagwell to operate the car at the time in question and thus the "omnibus insured" provision of the Pan American Policy covered both Suell and Holly.[1]

In addition to contesting the issue of Suell's permission to drive the Bagwell car, Pan American strongly contends that coverage for Suell and Holly is expressly excluded under the Bagwell policy by subsection (g) under "Exclusions" of that policy which provides: "This policy does not apply under Part I: * * *. (g) to an owned automobile while used by any person while such person is employed or otherwise engaged in the automobile business, * * *" Automobile business is defined in the policy as "the business or occupation of

1. The policy provides omnibus coverage as follows:
"Persons Insured: The following are insureds under Part I:
(a) with respect to the owned automobile,
(1) * * * *

(2) any other person using such automobile with the permission of the named insured provided his actual operation or * * * his actual use thereof is within the scope of such permission, and * * *"

selling, repairing, servicing, storing, or parking automobiles."

The district court found that Suell had the implied permission of Bagwell to drive his car, that Suell and Holly were therefore "persons insured" under the provisions of the Pan American policy issued to Bagwell, and that the exclusion of subsection (g) of that policy, relied upon by Pan American to defeat coverage, was not applicable. Accordingly, Pan American, having afforded primary coverage and Universal only excess coverage, judgment for Universal was entered against Pan American for $10,000 plus court costs and attorney's fees.

We agree with the district court that Suell had the implied permission of Bagwell to drive his car, and that therefore Suell and Holly were "persons insured" under the omnibus provisions of the Pan American policy. We disagree, however, with Universal's contention that the "automobile business" exclusion of section (g) of the Pan American Policy is not applicable sub judice. We are convinced that it is a limitation upon the omnibus clause and thus excludes Suell and Holly from coverage under the Bagwell policy.

In this diversity case we must apply the law of Texas, Erie Railroad Co. v. Tomkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, or where, as here, the courts of Texas have not spoken on the precise question presented, we must determine, as best we can, what they would decide. Polk County, Georgia v. Lincoln National Life Insurance Co., 5 Cir. 1959, 262 F.2d 486, 489. We look to any "persuasive data available, such as compelling inferences or logical implications from other related adjudications," or look to decisions on a similar point " * * * as a reasonably satisfactory basis for a conclusion * * *" Id.

At the outset, we think it significant that the language of the exclusion under consideration in the Pan American policy was changed in 1963. Theretofore, the exclusion applied " * * * when the insured *automobile* is used in the business of selling, repairing, servicing, storing or parking of automobiles," Tindall Pontiac, Inc. v. Liberty Mutual Insurance Co., 441 S.W.2d 948, 949 (Tex.Civ.App.—San Antonio 1969, writ dism'd), as contrasted with the present language of the policy, excluding "an owned automobile while used by any person while such person is employed or otherwise engaged in the automobile business." In *Tindall* the policy provision, relation of the parties, and factual situation were identical to those of this case with one exception. The collision therein occurred while the employee of the automobile agency was driving the owned vehicle from one service department of the agency to another, rather than from the agency to the home of the owner-insured. The Court of Civil Appeals held that the automobile agency and its employee were within the business exclusion of the standard Texas family policy because the Automobile agency was in the "automobile business" and the employee driving the vehicle was "directly engaged in performing an act relating to said business." *Tindall, supra* at 949. The court noted that the automobile business exclusion is a usual limitation upon the coverage of the omnibus provision of the standard automobile policy, " * * * so as not to extend coverage over to a service station, public garage, [or] sales agency, * * * even though such establishment has rightful custody of the vehicle during its operation, maintenance, or use by an employee thereof." *Id.,* citing 7 Appleman, Insurance Law and Practice, § 4372.

The *Tindall* court interpreted the post-1963 automobile business exclusion to apply " * * * to an insured automobile while used by a person (other than the named insured, etc.), while such *person* is employed or otherwise engaged in one of these excluded businesses." *Id.* It is undisputed that Suell was using the Bagwell car while employed by a company engaging in the automobile business as defined in the Pan American policy. At this point,

therefore, in unambiguous terms, Suell and Holly were excluded from coverage under the omnibus provision of the Pan American policy.

Query, in this determination affected by the fact that the injury which resulted in the Beleck claim occurred while the Bagwell car was being delivered to its owner's office following repair, rather than while the car was being driven about during the actual repair process at the sales agency. Although this point was not decided in *Tindall*, the court observed that prior to 1963 the policy was couched in language that excluded an *automobile* "while used in the excluded business", and then emphasized the fact that the language of the exclusion was changed subsequent to the court's holding in Western Alliance Insurance Company v. Cox, 394 S.W.2d 238 (Tex.Civ. App.—Waco 1965, writ ref'd n. r. e.), to apply the exclusion to a *person* employed in one of the excluded businesses (emphasis added). In factual context, *Western* and the instant case cannot be distinguished. It is therefore clear that the business exclusion language was changed to overcome the narrow interpretation given to it in *Western*. This broadening effect was noted by the *Tindall* court, which, in drawing a distinction between the old and the new exclusionary language, pointed out that the change would be of " * * * particular significance in cases involving the delivery of the insured vehicle by a garage employee pursuant to the performance of said repair." *Tindall, supra* at 950. This reading of Tindall is consistent with and supportive of the court's comparison of the risk-bearing situation in which it made clear that " * * * without any control from the owner as to the selection of the driver, the place driven, and the manner of driving, the hazard is too great for an insurer to assume. On the other hand, the service station or repair shop can control and regulate such use." *Tindall, supra* at 949. We perceive no significant difference in the hazard or risk incurred by the owner of a private vehicle when an employee of a sales agency is delivering the car from service shop to service shop, or delivering the car from shop to home. The fact that in the instant case Suell was an unlicensed driver, underscores the practicality and reasonableness of excluding the garage repairman's negligence from coverage by a family policy.

We are unpersuaded that the Texas courts would follow Dumas v. Hartford Accident & Indemnity Company, La. App. 1965, 181 So.2d 841, as argued by Universal. In *Dumas* an automobile business exclusion which was similar to the one in this case was found not applicable where the accident occurred after the repairs had been completed and the automobile was being returned to the insured. *Tindall* took note of *Dumas* but found that it was not called upon to decide the question presented by the delivery situation. *Dumas* therefore has no Texas support. The strong language in *Tindall* in applying the exclusion, reinforced by the change in language subsequent to *Western* convinces us that Texas would take a broad view of the exclusionary provision.

The delivery of an automobile following its repair under warranty is an integral part of the service afforded to customers for the obvious purpose of increasing good will and maintaining friendly customer relations. The application of the business exclusion clause in the Pan American policy and the finding of primary coverage under Holly's garage liability policy issued by Universal is consistent with the rule in most states, and in this circuit, that the responsibility for the operation of a car in the course of its repair, extending to delivery, falls upon the bailee. *See* Sanders v. Liberty Mutual Insurance Company, 5 Cir. 1965, 354 F.2d 777, 779. We have no doubt, particularly in light of *Tindall*, that Texas would recognize and follow this weight of authority.

Reversed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.